



# "Keep Your Fetters Bright and Polished" The continued Use of Bar Fetters and Cross Fetters

| | |
|---|---|
| Publisher | Amnesty International |
| Publication Date | 1 May 1995 |
| Citation / Document Symbol | ASA/33/12/95 |
| Cite as | Amnesty International, *"Keep Your Fetters Bright and Polished" The continued Use of Bar Fetters and Cross Fetters*, 1 May 1995, ASA/33/12/95, available at: https://www.refworld.org/docid/3ae6a98544.html [accessed 12 June 2023] |
| Comments | The use of iron bar fetters and chains as instruments of restraint and punishment of prisoners is permitted under Pakistan law in specific circumstances, but fetters - both bar fetters and cross fetters - are also frequently used unlawfully as instruments of torture. This document first describes the different types of fetters, i.e. bar fetters, cross fetters and chains, which are in use in Pakistan and then sets out the legal use of fetters as governed by the Prison Rules and the Prisons Act. It then summarizes the Sindh High Court's decision to prohibit the use of fetters at all times on the basis that it violates the dignity of man which is guaranteed in the Constitution of Pakistan. However, even after the High Court's ban, fetters continued to be used and in March 1994, the Government of Sindh province went into appeal against the High Court decision. The second section describing the use of bar fetters and cross fetters as instruments of torture is based on witness accounts which an Amnesty International delegation obtained in November 1994 in Pakistan. Interviews with prisoners under trial and reports from human rights activists indicate that prisoners are frequently and sometimes for extended periods placed in isolation cells and in cross and bar fetters to extract money from them or to intimidate or humiliate them. In the final section Amnesty International sets out recommendations to the Government of Pakistan to review the laws governing the use of fetters and to take urgent steps to stop the unlawful use of fetters. |
| Disclaimer | This is not a UNHCR publication. UNHCR is not responsible for, nor does it necessarily endorse, its content. Any views expressed are solely those of the author or publisher and do not necessarily reflect those of UNHCR, the United Nations or its Member States. |

## 1. Introduction

The use of bar fetters and chains as instruments of restraint and punishment of prisoners is permitted under Pakistan law in specific circumstances, but fetters     both bar fetters and cross fetters     are also frequently used unlawfully as instruments of torture in Pakistan's prisons, particularly by wardens who wish to intimidate or humiliate prisoners or to extract money from them.

This document first sets out the legal use of bar fetters and chains as governed by the Prison Rules and the Prisons Act and then describes the unlawful use of fetters for torture and other forms of ill-treatment. In the final

section, it looks at international standards relating to the use of fetters and sets out recommendations regarding the legal use of fetters and the prevention of their unlawful use.

## 2. Description of fetters used in Pakistan

There are at least three types of fetters in use in Pakistan: bar fetters, cross fetters and link fetters or chains. An Amnesty International delegation in November 1994 saw dozens of prisoners under trial in bar fetters and chained to armed police guards in the compound of the City Courts of Karachi, in police vans being brought to court from prison and in the corridors of the Sindh High Court in Karachi. These instruments of restraint are not always removed when prisoners are brought into the court room and some judges are reported to have objected to this practice.

Bar fetters consist of iron rings locked around the ankles of prisoners; an iron bar is riveted to each of these iron shackles making an inverted "V". These two vertical bars are about 50 cm long and are linked at mid-thigh level by an iron ring which again is connected to a rope or chain around the waist. The rods are of one standard size. Men who are not of average hight may suffer when bars are too long or too short for them; this may add to the normal discomfort experienced in wearing bar fetters. The iron bars are about 1.2 cm in diameter and weigh, together with the ankle shackles, around four kg. Prisoners were also seen to wear iron cuffs around one or both their wrists; these are linked with long iron chains to their wardens.

When Amnesty International spoke to fettered prisoners awaiting trial in Karachi in November 1994, their accounts of the use of fetters in jail were almost identical and were often confirmed by the police officers to whom the prisoners were chained. Fettering is common knowledge and taken by prisoners and police alike as a matter of course.

Prisoners told the Amnesty International delegation that they are sometimes put in cross fetters; these are iron bars about 50 cm in length attached in addition to bar fetters and placed between the iron rings around the ankles keeping the prisoners' legs permanently apart at the bar's length. With cross fetters it is impossible to walk, to stand up when lying or to lie down when standing without hurting oneself. To Amnesty International's knowledge the use of cross fetters is not permitted under any law in Pakistan.

Link fetters or chains are used on prisoners convicted to hard labour. Ordinary handcuffs are also used to restrain prisoners.

## 3. Legal use of bar fetters and chains

### 3.1 Regulations governing the use of fetters

The Prisons Act and the Prison Rules permit the use of bar fetters and chains only in specific circumstances.

The Prisons Act of 1894 lays down in section 46 that the jail superintendent may punish a prisoner for so-called "prison offences", i.e. acts of wilful disobedience against prison regulations including assaulting wardens or fellow prisoners, indiscipline or destruction of prison property and attempts to escape. The punishments range from formal warning, hard labour, withholding of food and whipping to the "imposition of fetters of such pattern and weight, in such manner and for such period, as may be prescribed by rules made by the Provincial Government" (section 46(7)). Fettering may not be imposed by officers below the rank of superintendent, but in case of "urgent necessity" (which is not defined) a jailer may place a prisoner in fetters as punishment for "prison offences" but shall "forthwith" inform the superintendent of this decision (section 58). Section 56 further says that "whenever the Superintendent considers it necessary (with reference either to the state of the prison or the character of the prisoner) for the safe custody of any prisoners that they should be confined to irons, he may, subject to such rules and instructions as may be laid down by the Inspector General with the sanction of the Provincial Government so confine them". While such fettering may not normally extend beyond three months, the superintendent may apply to the Inspector General for sanction for more extended fettering of a prisoner

(section 57(2)) if he considers it "necessary, either for the safe custody of the prisoner himself or for any other reason".

Section 49 of the Prisons Act clearly lays down that "except by order of a Court of Justice, no punishment other than the punishments specified in the foregoing sections [relating to 'prison offences'] shall be inflicted on any prisoner, and no punishment shall be inflicted on any prisoner otherwise than in accordance with the provisions of those sections".

The Prison Rules in rules 643 to 655 lay down specific rules for the imposition of bar fetters. Only the superintendent of a jail is authorized to order the use of bar fetters and handcuffs, while subordinate jail staff may do so only in an emergency but are then required to report this decision to the superintendent on his next visit to the jail (rule 645).

The superintendent exercises these powers without restriction when prisoners are outside the prison, for instance on the way to a court hearing. Rule 643 says that he may "at his discretion, require all or any prisoners to wear fetters while confined to any place outside the walls of the prison". Rule 649 spells out clearly what kind of fetters are permitted in different localities. "Bar fetters shall be used for safe custody inside the prison and link-fetters ordinarily for prisoners working in parties outside the prison." Inside the jail, different rules regarding the imposition of fetters apply for different categories of prisoners. Some prisoners may not be put in fetters at all; these include women prisoners, prisoners against whom there are no criminal charges and prisoners who for "reasons of age, physical infirmity or serious illness" are by the jail medical officer declared to be unfit to be placed in fetters (Rule 650). Children and juveniles are not protected from the imposition of fetters unless a medical officer declares them medically unfit.

Five classes of prisoners are "ordinarily exempted" from being placed in fetters, namely (1) prisoners whose unexpired term of imprisonment is less than six months; (2) prisoners who have undergone three-fourths of their substantive sentence of imprisonment; (3) prisoners under trial; (4) prisoners under sentence of death and (5) prisoners who are being brought to court. However, in all these cases the jail superintendent may decide to order the imposition of fetters "for special reasons" which the Act does not specify. It only stipulates that such a decision shall be noted in the prisoner's record (Rule 651).

A convicted prisoner in a prison may not be fettered except "on the ground that he is violent, dangerous or had escaped or attempted to escape" (Rule 644(i)). Convicted prisoners sentenced to long terms of imprisonment (the length of the prison term is not defined in the Prison Rules) or life imprisonment may be fettered while being held in a district prison before being transferred to a central prison. If in "exceptional circumstances" which are not covered by these stipulations and which are not defined, the jail superintendent decides to impose fetters, the decision has to be entered in the prisoner's record (Rule 644(iii)).

All decisions to impose fetters on convicted prisoners or prisoners under trial have to be recorded in the prisoner's personal record; the record must also state the reason why the fetters were imposed and the time when they were removed (Rule 646). If prisoners are transferred to hospital for medical treatment, fetters are ordinarily removed, except when the jail superintendent directs otherwise or when the prisoner is recorded to be dangerous. The jail superintendent may order in such case that the fetters be removed from only one leg of the patient (Rule 647).

The order to impose fetters has to be periodically reviewed. Rule 648 lays down that the jail superintendent shall review the cases of all prisoners who are fettered for safe custody at the beginning of every quarter of the year. If the superintendent is satisfied that the prisoner's conduct or other circumstances make the imposition of fetters for safe custody no longer necessary, they shall be removed. If a prisoner has been in fetters for six months and the superintendent believes that he should be fettered for a longer period, he has to report the case to the Inspector General of Prisons and await his orders. The Inspector General may at the time of his inspection of jails satisfy himself that there are sufficient reasons for imposing fetters.

Fetters imposed on prisoners for safe custody are to be examined daily by the head warden and in the case of dangerous prisoners by the assistant superintendent; once a week the fetters of all prisoners are to be examined

by the assistant superintendent of the jail (Rule 653). Further, "all prisoners under fetters shall be provided with gaiters to prevent abrasion" (Rule 654) and fettered prisoners are obliged to "keep their fetters bright and polished" (Rule 655).

Prisoners may be placed in link-fetters or chains if they are working in parties outside the prison (Rule 649). Hand-cuffs as means of restraint may be imposed at any time on any type of prisoner if "the Superintendent is of the opinion that their imposition is necessary for the protection of the prisoner himself or any other person" (Rule 652).

## 3.2. Decision of the Sindh High Court prohibiting bar fetters

Based on a report after the inspection in July 1989 of the juvenile jail in Landhi, Karachi, by the then Chief Justice of the Sindh High Court, Justice Ajmal Mian, the Sindh High Court took up an investigation of the use of fetters in jails under its suo moto powers. Justice Ajmal Mian had found in 1989 that many juveniles awaiting trial were bar-fettered. He was informed that they remained fettered from the day of their admission as a matter of security and convenience, sometimes for months. Newly arrived prisoners had obviously not committed any disorderly act and could therefore not have been placed in bar fetters as a disciplinary measure. One prisoner awaiting trial seen by Justice Ajmal Mian, had been made to work in the kitchen at night. The judge was told that he was kept in fetters 24 hours a day as "it was not practical to remove the chains every day".

In the following years, judges of the Sindh High Court further examined jail conditions in Sindh; in January 1993, 18 judges of the Sindh High Court inspected the Central Jail in Karachi but did not visit the security wards and the "bund wards" or isolation cells. In the following month, Justice Nizam Ahmad of the Sindh High Court was deputed to inspect these two wards of Karachi Central Jail. He observed, "... the condition of most of the prisoners who were kept in Security/Bund wards was pathetic and pitiable. The manner in which they were kept was against the dignity of a human being. Many of them were kept in a cell, having an area of a few square feet, in solitary confinement with bar fetters on. If a comparison of the conditions of these prisoners is possible, then it can only be made with the animals in a zoo ... [who] are better placed as they have no bar fetters inside their cages and they are provided with better facilities". Most of the prisoners complained that they were kept inside the cell for several days in bar fetters and were taken out only once a week for a bath.

Justice Nizam Ahmad then formulated three question relating to the use of fetters which formed the basis of an investigation by the Sindh High Court in late 1993. On 30 December 1993, the Sindh High Court decided that the relevant sections of the Prisons Act of 1894 (i.e. sections 46(7) and 56) and of the Prison Rules (Rules 643 to 655) "are inconsistent and in violation of Article 14 of the Constitution as well as against the injunctions of Islam. As such they are declared as void and as of no legal effect". Article 14(1) of the Constitution of Pakistan lays down: "The dignity of man and, subject to law, the privacy of home, shall be inviolable."

The judgment argues that the dignity of man is guaranteed in the Constitution in absolute terms and so cannot be restricted for any purpose whatsoever. It argues that the Prisons Act, enacted in 1894, does not conform with contemporary human rights consciousness; it gives the superintendent of a prison "unfettered discretion to put anyone in Security Ward/Bund Ward [solitary confinement] and to require prisoners to wear fetters. All depend on his sweet will. Neither the prisoner has any right of defence [against the superintendent's decision regarding the imposition of bar fetters] nor any opportunity ... to explain his position. He is also not provided with any legal aid or assistance. The manner in which the prisoners are kept in the Security Ward/Bund Wards with bar fetters on is humiliating and against the dignity of man. Loss of one's freedom and confinement is in itself a very severe punishment. After locking up a man, to inflict further punishment is not only harsh but inhuman and against the cherished human values." The judgement further cites directions of the Prophet Mohammad to treat prisoners with generosity and kindness. The judgment notes that the Assistant Advocate-General had conceded that the "power to punish ... offences inside the jail which is available under the Prison Rules should not be left at the sole discretion of the superintendent of a prison. According to him, either such power should be withdrawn and in case of any complaint against a prisoner the matter should be referred to the district and sessions judge for necessary orders, or punishment awarded by the Superintendent [of] Prison should be made subject to judicial

6/12/23, 3:47 PM                Refworld | Pakistan: Use of fetters sought and imposed: The continued use of bar fetters and cross fetters

Case 1:17-cr-00270-LMB Document 138-3 Filed 07/25/23 Page 5 of 10 PageID# 800

scrutiny by the district and sessions judge and provisions should be made for providing sufficient opportunity of defence to the prisoner". The Sindh High Court prohibited the use of fetters at all times.

In a similar development, the Punjab High Court at Lahore in November 1994 asked the government of Punjab within six months to bring the prison rules in Punjab regarding the use of fetters in conformity with constitutional provisions. It ruled that the unbridled discretion of prison superintendents to place fetters on prisoners was inconsistent with Article 14 of the Constitution. The Punjab High Court, however, stated that it did not favour the total abolition of the use of fetters but argued that the superintendent's powers should be clearly circumscribed to bring the rules into conformity with constitutional provisions. The court suggested that prisoners should be given an opportunity to be heard before being placed in fetters and such decision should be taken by a committee comprising the provincial home secretary, the Advocate General and the Inspector-General of Prisons. To Amnesty International's knowledge, no steps have yet been taken to enforce this decision by amending relevant sections of the Prison Rules.

## 3.3. Continued use of bar fetters after the Sindh High Court judgment

Despite the decision of the Sindh High Court in December 1993, bar fetters continued to be used on prisoners during transport between prisons and courts and as a disciplinary measure in jails as previously permitted by the prison regulations.

In February 1994, human rights lawyer Zia Awan brought the continued practice of fettering prisoners observed by him and other lawyers in Sindh to the attention of the Sindh High Court; he was then directed by the court to assess the use of fetters in Karachi Central Jail. He interviewed 52 prisoners in that jail and collected evidence of different types of ill-treatment; he found for example that newly arrived prisoners awaiting trial were usually placed in particularly ill-equipped barracks from which they were transferred to better equipped barracks only on payment of money and that prisoners, whether awaiting trial or convicted, were made to squat with their heads bent down and were not permitted to look up during visits by jail officials. Medical attention was reported to him to be provided only if prisoners paid bribes, resulting in poor health of many prisoners, several of whom suffered from skin diseases, kidney problems and tuberculosis. Several prisoners had cut marks and scars on their bodies which they said had resulted from torture by prison staff. The interviewed prisoners also confirmed earlier reports that during the night of 13 January 1994 at least 30 prisoners were undressed and paraded nude in front of other prisoners and staff and afterwards locked up nude in their barracks without blankets, some of them for several days. On several later dates, prisoners have reportedly been humiliated by being held naked in their barracks, mostly for one or two days.

With regard to the use of fetters, Zia Awan found that prisoners awaiting trial are routinely placed in bar fetters and made to do hard labour. Several prisoners said they were afraid to report fettering and other ill-treatment for fear of further punishment by jailers. Nevertheless, of the 52 prisoners interviewed in different barracks, 44 said that in the recent past they had been placed in fetters for continuous periods ranging from one day to three weeks; most reported fettering for an average length of seven to ten days. Of these prisoners, 24 reported that they had been put continuously in cross fetters, some for as long as three weeks at a stretch. Some of them said that fetters had not been removed during hospitalization and that this had hampered treatment. At least three prisoners reported that they had been held in cross fetters in isolation cells. Zia Awan also noticed wounds and soreness on the ankles of several prisoners apparently resulting from fettering.

In April 1994 Zia Awan filed a constitutional petition in the Sindh High Court describing his findings in Karachi Central Jail; he submitted that the prevailing practices violated several fundamental rights guaranteed by the constitution, such as those contained in Articles 9 (right to security of the person), 13 (protection against double punishment), 14 (inviolability of the dignity of man) and 25 (equality of citizens before the law). He requested that existing fetters in the province's prisons be collected and sold for scrap metal and that the proceeds be made available for the welfare of prisoners. The hearing of the petition was adjourned in February 1995 in view of the appeal of the Sindh government against the Sindh High Court decision which is pending in the Supreme Court.

## 3.4. Appeal of the Sindh Government against the High Court decision

On 31 March 1994, the Supreme Court admitted the appeal of the Additional Advocate General of Sindh against the judgment of the Sindh High Court prohibiting the use of bar fetters and at the same time issued an interim stay order regarding the implementation of that judgment pending a decision by the Supreme Court. That is to say, prisoners may be fettered in accordance with the Prisons Act and the Prison Rules until the Supreme Court comes to a decision. The representative of the Sindh government argued in his appeal that to do away with the use of bar fetters would render the safe custody of dangerous prisoners very difficult. Moreover, the appeal challenged the judgment on formal grounds by arguing that the Sindh High Court had gone beyond its competence when it had considered the compatibility of the use of bar fetters and Islamic injunctions. To Amnesty International's knowledge, the Supreme Court has not yet begun hearing the appeal.

## 3.5. Fettering of juveniles

In February 1995, a human rights lawyer in Lahore filed a petition in the Punjab High Court alleging that she had found 12 fettered juvenile prisoners awaiting trial in Kot Lakhpat Jail of Lahore. She stated that several of these children had injuries on their ankles resulting from the use of leg fetters and that the reasons for imposing fetters had not been recorded in the juvenile prisoners' records as required by law. During a hearing on 28 February 1995, the Assistant Advocate General of Punjab submitted that only two children had been fettered in Kot Lakhpat Jail, that the fettering was in accordance with the rules and that they had not been injured by their fetters. The Lahore High Court then directed the Punjab Inspector General of Prisons to visit the jail and submit a report about his findings within 15 days.

The report stated that nine children were found to be fettered in Kot Lakhpat Jail and that 19 juveniles were fettered in other prisons in Punjab. The Lahore High Court noted that under Rule 651 of the Prison Rules, prisoners awaiting trial are ordinarily exempt from the imposition of fetters unless special reasons necessitate their use. As all the 28 children were awaiting trial and as no special reasons for using fetters on them had been recorded in their prison files, the Lahore High Court on 3 April 1995 ordered the removal of their fetters. The order of the Lahore High Court signed by the Acting Chief Justice added that "if in respect of any of them, special reasons are recorded by the Superintendent of Jail concerned, these reason shall be shown to me before they are again put in fetters". No action is known to have been taken against jail staff for unlawfully fettering the children.

## 4. The use of fetters as instruments of torture

Torture, including rape, in the custody of the police, paramilitary forces and in prisons continues to be reported from Pakistan despite the Pakistan People's Party's (PPP) pre-election promises to restore the rule of law and respect for human rights in Pakistan. Prisoners and detainees are beaten, kicked, blind-folded, raped and subjected to electric shocks and cigarette burns when the detaining authorities want to gain information, punish, humiliate, intimidate or     most frequently     extract money from them. Fettering to extract money, to humiliate or intimidate prisoners in prisons has frequently been reported.

Amnesty International raised its concern regarding the use of fetters for the purpose of torture and ill-treatment in its recent report, Pakistan: The pattern persists: Torture, deaths in custody, extrajudicial executions and "disappearances" under the PPP government (AI Index: ASA 33/01/95) but so far the Government of Pakistan has not responded to Amnesty International's concerns relating to the unlawful use of fetters in prisons.

A former prisoner described that "superintendents prescribe the fetters at whim, when a prisoner refuses an order which either violates his dignity or is against the prison rules. Such a prisoner is likely to be put in fetters for weeks and even months in the narrow confines of the bund ward" (Dawn, 8 April 1994). He described the fetters as "unpolished, with rough sharp edges" which rub the ankles sore and rupture the skin. He also alleged that some prisoners would hire less well-off prisoners to polish the fetters for them and that these prisoners would therefore also resist having their fetters taken off at night as they feared that they would not be given back the smoothened fetters on the next day.

Case 1:17-cr-00270-LMB Document 138-3 Filed 07/25/23 Page 7 of 10 PageID# 802

During its visit to Pakistan in November 1994, a delegation of Amnesty International met several prisoners awaiting trial who reported that torture in prisons is the rule rather than the exception. One prisoner said: "In our ward in Karachi Central Jail there are 15 punishment cells, they are all full. All new prisoners are put there first, to break their resistance; if they are new in prison, what are they punished for? In a punishment cell one is kept alone, in bar fetters and they add cross fetters, from ankle to ankle so you cannot close your legs. I was held in cross fetters for almost two weeks and was also blindfolded. My ankles were swollen but because I could not pay the money they demanded, they did not take my fetters off. I had not done anything for which they could claim to punish me, they are only after money. I know some prisoners who have paid 5,000 Rupees and their fetters were removed." Several other prisoners gave similar accounts of having been put in bar fetters and some in cross fetters simply because prison staff wanted to extract money from them. Prisoners from Faisalabad district jail in Punjab awaiting trial reported that 500 Rupees were extorted from them for removal of chains or fetters. In April 1995, over 800 prisoners in Hyderabad Central Jail, including prisoners awaiting trial and convicted prisoners, in a 66-page signed statement smuggled out of jail and passed on to the press, alleged that prisoners in Hyderabad Central Jail who could not pay bribes to prison staff were arbitrarily held in bar fetters and placed in solitary confinement.

In the corridor of the Sindh High Court building and in the City Courts of Karachi, the Amnesty International delegation saw several prisoners whose ankles were bandaged as they had become sore and bruised from the fetters rubbing against them; on top of the bandages prisoners still wore shackles and bar fetters.

## 5. International human rights standards relating to the use of instruments of restraint

The main international standards for the treatment of prisoners and detainees are contained in the Standard Minimum Rules for the Treatment of Prisoners, adopted by the First United Nations Congress on the Prevention of Crime and the Treatment of Offenders, held in Geneva in 1955 and approved by the Economic and Social Council by its resolutions 663C (XXIV) of 31 July 1957 and 2076 (LXII) of 13 May 1977. The Rules "seek only, on the basis of the general consensus of contemporary thought and the essential elements of the most adequate system of today, to set out what is generally accepted as being good principle and practice in the treatment of prisoners ... " (Preliminary Observations).

Rule 57 of the Standard Minimum Rules lays down that prisoners may not be subjected to punishment aggravating their imprisonment or to inhuman or degrading treatment or punishment: "Imprisonment and other measures which result in cutting off an offender from the outside world are afflictive by the very fact of taking from the person the right of self-determination by depriving him of his liberty. Therefore the prison system shall not, except as incidental to justifiable segregation or the maintenance of discipline, aggravate the suffering inherent in such a situation." Rule 31 lays down with respect to all prisoners and detainees: "Corporal punishment, punishment by placing in a dark cell, and all cruel, inhuman or degrading punishments shall be completely prohibited as punishments for disciplinary offences".

Rule 8(b) says: "Untried prisoners shall be kept separate from convicted prisoners"; "Unconvicted prisoners are presumed to be innocent and shall be treated as such" (Rule 84(2)), "... they shall not be required to work" (Rule 89).

Rules 27 to 31 lay down how discipline is to be maintained in jail and how its breach may be punished: "Discipline and order shall be maintained with firmness, but with no more restriction than is necessary for safe custody and well-ordered community life" (Rule 28). "No prisoner shall be employed, in the service of the institution, in any disciplinary capacity" (Rule 28(2)). No prisoner shall be punished for a disciplinary offence except in accordance with a law or regulation defining such offence, determining the punishment for it and identifying an authority competent to impose such punishment (Rule 29). Before a punishment is imposed for a disciplinary offence, the prisoner has to be informed of his alleged offence and be "given a proper opportunity of presenting his defence" (Rule 30(2)).

Rule 33 with its three subsections and Rule 34 regulate the use of instruments of restraint:

Case 1:17-cr-00270-LMB Document 138-3 Filed 07/25/23 Page 8 of 10 PageID# 803

*"33. Instruments of restraint, such as handcuffs, chains, irons and strait-jackets, shall never be applied as punishment. Furthermore, chains or irons shall not be used as restraints. Other instruments of restraint shall not be used except in the following circumstances:*

(a) As a precaution against escape during a transfer, provided that they shall be removed when the prisoner appears before a judicial or administrative authority;

(b) On medical grounds by direction of the medical officer;

(c) By order of the director, if other methods of control fail, in order to prevent a prisoner from injuring himself or others or from damaging property; in such instances the director shall at once consult the medical officer and report to the higher administrative authority.

"34. The pattern and manner of use of instruments of restraint shall be decided by the central prison administration. Such instruments must not be applied for any longer time than is strictly necessary."

## 6. Amnesty International's concerns and recommendations relating to the use of fetters

### 6.1. Review the laws governing the use of fetters

Amnesty International believes that the regulations governing the use of bar fetters and chains and the practice ascertained from prisoners and human rights organizations fall far short of internationally agreed standards for the treatment of prisoners which prohibit the use of fetters and chains as instruments of restraint or punishment and strictly regulate the use of other instruments of restraint. In Amnesty International's view the use of bar fetters in the manner permitted by the Prisons Act and the Prison Rules constitutes a form of cruel, inhuman and degrading treatment or punishment which is prohibited by international human rights standards.

The prohibition of torture and cruel, inhuman and degrading treatment or punishment is a fundamental norm of international human rights law which is contained in a number of international human rights treaties and is non-derogable, under any circumstances. Article 5 of the Universal Declaration of Human Rights establishes that "No one shall be subjected to torture or cruel, inhuman or degrading treatment or punishment". Article 2 of the Declaration on the Protection of All Persons from Being Subjected to Torture and Cruel, Inhuman or Degrading Treatment or Punishment reads: "Any act of torture or other cruel, inhuman or degrading treatment or punishment is an offence against human dignity and shall be condemned as a denial of the purposes of the Charter of the United Nations and as a violation of the human rights and fundamental freedoms proclaimed in the Universal Declaration of Human Rights". This prohibition reflects a principle of customary international law according to which the government has also the duty to investigate allegations of torture, compensate the victims and bring those responsible to justice.

Amnesty International urges the Government of Pakistan to initiate a review of the Pakistan Prison Rules and the Pakistan Prisons Act so as to bring their provisions regarding the use of instruments of restraint into conformity with internationally recognized standards of the treatment of prisoners, including the United Nations Standard Minimum Rules for the Treatment of Prisoners, the UN Body of Principles for the Protection of all Persons under Any Form of Detention or Imprisonment, and the International Covenant on Civil and Political Rights. Amnesty International recommends that the use of iron bars and chains as instruments of restraint or punishment be abolished in law and in practice and that the use of other instruments of restraint be strictly regulated. It also urges that the Government of Pakistan consider ratification of the relevant human rights instruments.

### 6.2. Stop the unlawful use of fetters

The use of fetters in order to extract money or gain information, or to humiliate and intimidate prisoners constitutes a form of torture and ill-treatment; as such it violates several international human rights standards and to some extent Pakistan's national law.

6/12/23, 3:47 PM Refworld | Pakistan: Women and Children Bought and Sold — The Continued Use of Leg Fetters and Cross Fetters

Case 1:17-cr-00270-LMB Document 138-3 Filed 07/25/23 Page 9 of 10 PageID# 804

Some forms of torture are prohibited by the Constitution of Pakistan which lays down in Article 14(2): "No person shall be subjected to torture for the purpose of extracting evidence". The use of fetters to intimidate or humiliate prisoners or to extract money from them is not covered by this partial prohibition of torture. Amnesty International reiterates its earlier recommendation that a more encompassing definition of torture be introduced in the constitutional prohibition of torture and relevant sections of the penal code in keeping with Article 1 of the United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment which states: "... the term 'torture' means any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. It does not include pain or suffering arising from, inherent in or incidental to lawful sanctions." The lawful sanctions, however, should not themselves allow for treatment or punishment considered to constitute torture or cruel, inhuman or degrading treatment or punishment, such as the imposition of fetters.

Amnesty International has repeatedly called on the Government of Pakistan to end the widespread use of torture; its latest report, Pakistan: The Pattern persists: Torture, deaths in custody, extrajudicial executions and "disappearances" under the PPP government (AI Index: ASA 33/01/95) contained a list of recommendations to end torture in Pakistan. Amnesty International urged, inter alia and now reiterates with regard to torture in jails by the use of fetters that the government should:

Publicly condemn torture: The Government of Pakistan should publicly demonstrate its total opposition to torture. Amnesty International is calling upon the authorities at the highest level, including the head of state, heads of federal and provincial governments and heads of different security forces to officially condemn torture and to make clear to law enforcement personnel that torture will not be tolerated under any circumstances.

Strengthen existing legal safeguards against torture: Some of the provisions of the Pakistan Penal Code and the Code of Criminal Procedure do not adequately protect prisoners against torture. Detention centres should be visited regularly and routinely by individuals independent of the detaining authorities; such individuals may be appointed by independent national bodies or they may be delegates from international bodies such as the International Committee of the Red Cross. They should be able to communicate freely with detainees without prison staff being present. Amnesty International suggests that such monitoring be incorporated into a general program set up at the national and provincial level to prevent torture.

Investigate every single reported instance of torture: Amnesty International again urges the Government of Pakistan to ensure that all cases of torture be thoroughly, promptly and impartially investigated. The terms of reference and the findings of such inquiry should be promptly made public.

Promptly bring to justice all law enforcement personnel responsible for torture: In order to stop the recurrence of torture it is of paramount importance that those responsible are promptly brought to justice. Amnesty International believes that the phenomenon of impunity, literally the exemption form punishment, is one of the main contributing factors to the continuing pattern of human rights violations the world over. By bringing perpetrators of human rights violations to justice, the government will be sending a clear message that such violations will not be tolerated and that those found responsible will be held fully accountable. When there is failure to investigate human rights violations and when those responsible are not held to account, a self-perpetuating cycle of violence is set in motion resulting in continuing violations of human rights.

Train all law enforcement personnel in human rights norms: All law enforcement personnel, including prison staff, should receive proper training with a strong human rights component regarding the absolute prohibition of torture. They should be familiarized with the Universal Declaration of Human Rights, the UN Code of Conduct for Law Enforcement Officials, the UN Standard Minimum Rules for the Treatment of Prisoners, and the UN Convention against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment.

Case 1:17-cr-00270-LMB Document 138-3 Filed 07/25/23 Page 10 of 10 PageID# 805

Domestic laws against torture should also be included in the training and if necessary, such texts should be translated into the vernacular languages.

<u>Ratify international treaties relating to torture</u>: When a state ratifies international or regional human rights instruments, it affirms to the international community its commitment to respect and promote human rights and guarantees that all future governments will be bound by the international obligation to protect human rights. Amnesty International regards ratification of these instruments as an important indication of a government's commitment to the concept of human rights as a concern that transcends national boundaries.

Amnesty International reiterates its call to the Government of Pakistan to ratify international human rights treaties, namely the United Nations Convention against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment and the International Covenant on Civil and Political Rights.

Copyright notice: © Copyright Amnesty International

## Search Refworld

by keyword [Enter a word or phrase]
and / or country [All countries ▾]
[Clear] [Search]

Advanced Search | Search Tips

## Countries

- Pakistan

## Topics

- Criminal justice
- Freedom from torture, inhuman and degrading treatment
- Prison or detention conditions