**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 1:17cr270** |
| | ) | |
| **RAMY ZAMZAM** | ) | |
| | ) | |
| **Defendant.** | | |

**RAMY ZAMZAM'S MOTION FOR EARLY
TERMINATION OF SUPERVISED RELEASE**

To say that Ramy Zamzam's performance while on supervised release has been extraordinary would be an understatement. He embodies redemption and the power of the human spirit. For the reasons that follow, and with the support of his probation officer, Mr. Zamzam asks this Honorable Court to terminate early his supervised release. The government objects to this request.

**Background**

Mr. Zamzam's compassion, tenacity, and aptitude propelled him to his current successes, but not before these attributes aided his earlier missteps. Raised alongside his two brothers in Northern Virginia, Mr. Zamzam's family was close. He was taught to provide for others, work hard, and achieve his goals. He was well on his way to success, having graduated Magna Cum Laude from Howard University with a Bachelors of Science in biology and chemistry and then enrolled at Howard University on a full scholarship to become a dentist.

Yet in his early 20's, while in dental school, Mr. Zamzam's exposure to propaganda, coupled with an innate curiosity and a misguided group of friends, led him to travel overseas to attempt to counter American forces in Afghanistan. This was 2009. Mr. Zamzam spent the following thirteen years in the Pakistani prison system being brutally tortured. The full details of his torture were recounted in his memorandum submitted at the time of sentencing. *See* ECF No. 138 at 3-8. The experience left one of his friends completely broken; first incoherent, then nonresponsive, now a shell of the person he once was, unable to even feed himself or use the bathroom on his own.

Mr. Zamzam's return home was met with muted celebration. The world had changed, his father had died while he was imprisoned in Pakistan, and he now faced terrorism charges here. But Mr. Zamzam spent no time contemplating self-pity. He immediately began volunteering at a local food pantry, and within ten days of landing back on American soil, he had his first job. While on pretrial supervision, Mr. Zamzam was promoted and obtained a total of four part-time jobs. He also began pursuing higher education.

Since being sentenced to time-served and 20 years of supervised release in 2023, Mr. Zamzam's momentum has not slowed. If anything, its pace has only increased. Mr. Zamzam's achievements have been nothing short of extraordinary. His accomplishments would be remarkable by any measure, but that he achieved them while swimming against the current of his background makes them truly profound.

Mr. Zamzam graduated valedictorian with a 4.0 GPA from Georgetown University Law School Paralegal Studies Program. His commencement speech is Defense Exhibit 1.[1] Any person who may doubt the wisdom of a second chance need look no further than Mr. Zamzam's remarks, and those of the professor who introduced him, to allay any last shred of hesitation. "We have made mistakes in our lives. Mistakes that could have defined us," he said. "But they don't. They won't. Because those setbacks are not the final say on who we are. Instead, they are the reason we push harder, strive for more, reach higher." And indeed, Mr. Zamzam has reached higher. And higher.

After graduation, Mr. Zamzam received multiple job offers for paralegal positions. Staying true to his altruism, he accepted a position with Legal Aid in Washington, D.C. There, he was quickly promoted, and he continues to excel while serving the community.







*Ramy Zamzam at his Georgetown graduation ceremony*

[1] The full graduation ceremony is available at the following link, with Mr. Zamzam's introduction and speech starting at minute 35:00, https://youtube.com/live/jy5BYsFWp6Q




*Ramy Zamzam's profile on Legal Aide DC's website*

Through all of this, Mr. Zamzam maintained his original job at Old Navy where he has been for three years, and he is active member of the D.C. Social Justice Transformation Network, an organization of over 120 D.C. area legal services and social services providers. He is also working with his brother on a project to help justice-impacted individuals reenter and reintegrate into society. This organization is set to soon launch, and as with each of Mr. Zamzam's endeavors, it is sure to be a success.

Mr. Zamzam has not stopped pursuing his education as well. He is currently enrolled in University of the People's program to receive a Master's Degree in Business Administration. In his personal life, Mr. Zamzam remains close with his two brothers and his mother, and will soon be married. Mr. Zamzam has not had a

single instance of noncompliance while on supervised release and his probation officer enthusiastically supports this motion.

## Argument

### I. Legal standard

Section §3583 of Title 18 provides that a Court, after considering the §3553(a) factors,[2] may

> terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]

18 U.S.C. §3583(e)(1).

"Circumstances that justify early discharge have included exceptionally good behavior that makes the previously imposed term of supervised release 'either too harsh or inappropriately tailored to serve' general punishment goals." *Folks v. United States*, 733 F. Supp. 2d 649, 651 (M.D.N.C. 2010) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)). *See also United States v. Barr*, No. 7:17-CR-00085-3, 2022 WL 1750632, at *1 (W.D. Va. May 31, 2022)(granting early

---

[2] These factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guidelines range; (d) the need to avoid unwarranted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a).

termination of supervised release after approximately two years of a four-year term explaining that the defendant has steady employment, supportive family and friends, and that the travel restrictions impact his career opportunities); *United States v. Chapman*, 827 F. Supp. 369, 370 (E.D. Va. 1993)(granting early termination of supervised release after approximately one year of a two-year term over the government's objection).

The United States Sentencing Commission just recently amended the U.S. Sentencing Guidelines to promote consideration for early termination of supervised release. *See* USSG §5D1.4. In the application notes, the Commission detailed a list of factors for the Court to consider in deciding if early termination is appropriate. Specifically, the factors are:

(i) any history of court-reported violations over the term of supervision;

(ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);

(iii) the defendant's substantial compliance with all conditions of supervision;

(iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;

(v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and

(vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

In promulgating this change, "[t]he Commission sought to address… the fact that the terms and conditions of supervised release are imposed at original sentencing, often years before the defendant begins supervision." U.S. Sen't Com., *Amendment 835* (Nov. 1, 2025).[3] This was an issue because, as the Commission explained, "[p]eople and their circumstances may change in and after prison, such that the original term and conditions may no longer be appropriate after the defendant's release. Courts are encouraged to consider modifying the terms and conditions of supervised release whenever changed individual circumstances so warrant." *Id.* Thus, this amendment was meant "to encourage appropriate use of early termination," to "help ensure that resources are allocated to the individuals most in need of continued supervision and that the term is 'sufficient, but not greater than necessary' to fulfill the purposes of imposing supervision." *Id.* (citations omitted).

## II. The §3553(a) factors and the early termination guidelines factors weigh in favor of early termination.

### A. *Mr. Zamzam's history and characteristics*

As described in detail above, Mr. Zamzam has a long history demonstrating compassion, grit, and talent. He admits that he went astray in 2009, but even for the thirteen long years that he was imprisoned in Pakistan, he persevered. His mental and physical fortitude enabled him to survive then and thrive now. Since Mr. Zamzam's feet hit American soil he has not stopped living to the fullest extent

[3] Available at https://www.ussc.gov/guidelines/amendment/835

and achieving everything within reach. For someone who had every reason to lean into past abuse for self-pity and as an excuse to be less, Ramy has only shown strength and resolve to do more.

### B. *The nature and circumstances of the offense*

The nature and circumstances of the offense are straightforward. Mr. Zamzam and four of his friends left the United States to attempt to engage in physical jihad against U.S. forces. For this, he and his group paid a brutal price – a punishment was so severe that it transcended domestic and international standards. *See* ECF No. 138, Ex. 3. The thirteen years of torture that Mr. Zamzam endured while in Pakistani custody was brutal and inhuman. It has not defined him. It has only motivated him.

### C. *The need to protect the public and provide general and specific deterrence*

It is quite clear at this point, that specific deterrence has been achieved. Mr. Zamzam could not possibly do more to demonstrate that he is not the boy he once was. He is not a worry for his mother, or a shame to his country, but an outstanding, contributing citizen of whom everyone can be proud. As to the public, it is certainly deterrence enough to know that one could be tortured for thirteen years in a Pakistani prison, and the public does not need protecting from Mr. Zamzam. In fact his daily job is to assist the public – to others who find themselves in troubling times – Mr. Zamzam offers his compassion and expertise.

D. *Guidelines factors*

As discussed above, the U.S. Sentencing Commission recently amended the sentencing guidelines for supervised release, encouraging a more liberal use of early termination. Mr. Zamzam meets all of the factors in favor of early termination under the revised application notes. Specifically:

- Mr. Zamzam has zero history of court-reported violations over the term of supervision;
- Mr. Zamzam has demonstrated a practice, not only of an ability to lawfully self-manage, but to excel;
- Mr. Zamzam has been eminently compliant with all conditions of supervision;
- Mr. Zamzam has engaged in appropriate prosocial activities, including at his job, through volunteer work, and with his family and friends;
- Mr. Zamzam has completed all of his supervision requirements;
- Mr. Zamzam's early termination will jeopardize not public safety as evidenced by the strength and determination that Mr. Zamzam has shown through his torture and all that he has achieved since returning home.

Mr. Zamzam is one of those individuals for whom the original term of supervision is no longer appropriate, and the Court's resources could be more effectively allocated elsewhere. *See* U.S. Sen't Com., *Amendment 835* (Nov. 1, 2025).

## Conclusion

For all of these reasons, Mr. Zamzam is the ideal candidate for early termination of supervised release. He asks this Honorable Court to grant his motion and restore him fully to the status of a free man.

Respectfully submitted,
RAMY ZAMZAM
By Counsel

________/s/_____________
Jessica N. Carmichael, Esq.
Virginia Bar No. 78339
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, First Floor
Alexandria, Virginia 22314
(703) 684-7908
jessica@carmichaellegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of November, 2026 I filed the foregoing pleading through the ECF system, which shall then send an electronic copy of this pleading to all parties in this action.

________/s/_____________
Jessica N. Carmichael