IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| *v.* | ) | |
| | ) | No. 1:17-cr-270-LMB |
| RAMY SAID ZAMZAM. | ) | |
| | ) | |
| | ) | |
| *Defendant.* | ) | |

**UNITED STATES' RESPONSE OPPOSING THE DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**

## I. Introduction

Defendant, Ramy Zamzam, requests that the Court terminate his supervised release almost 17 years early. The defendant does not claim that supervised release has hindered him in any way. Quite to the contrary, the defendant contends that he is thriving under court supervision, pursuing an education, holding down multiple jobs, maintaining a stable residence, reporting as directed, and remaining in compliance with his conditions of supervision. Dkt. 242 at 2–5. All of this is commendable. Indeed, the fact that the defendant is working to better his life, so that he can become a permanent, law-abiding, productive member of society, is important. But simply doing what every defendant is supposed to do on supervised release is not a reason to terminate court supervision, particularly in a case where he has only served roughly three years of a twenty-year term of supervised release.

This is especially true here, where the defendant was already afforded substantial consideration in a plea agreement that allowed him to plead guilty and receive a sentence which resulted in no time in U.S. prison, despite the fact that his guideline range was 292-365 months

in prison.[1] Dkt. 133, PSR at 25. As part of his bargain with the government, the government agreed to recommend no imprisonment (beyond the one day spent at Alexandria Detention Center upon his return to the United States), and the defendant and the government jointly recommended the imposition of 20 years of supervised release, which the Court imposed. Dkt. 119 at 3; Dkt. 114 at 1 (Government Sentencing Memo); Dkt. 149 (Judgment and Commitment Order, August 3, 2023). Given the significance of the offense defendant pled guilty to, terminating the defendant's supervised release at this time would be premature, and it would undercut the plea agreement and the rationale underlying the government's sentencing recommendation, which the Court accepted.

## II. Factual Background

The Statement of Facts, which the defendant signed, and which was filed with his plea agreement, sets forth the relevant facts in this case. Dkt. 120. While the Court is undoubtedly very familiar with those facts, a few points are worth noting. First, while the defendant assigns blame for his decision to travel overseas to fight against American forces in Afghanistan at least in part to a "misguided group of friends," Dkt. 242 at 2, the reality is that the defendant was fully committed to this plan. He also engaged in conduct that helped to move the plan forward.

For example, prior to his departure, Zamzam and his co-defendant, Minni, produced a video which they called a "Final Message." Significantly, Zamzam was the only speaker on "A Final Message." In the video, he said that when Muslim lands are invaded, "physical *jihad* against the disbelievers becomes obligatory." This video was saved onto a USB drive which was given to Yemer's brother so that he could share it with the defendants' families after their

[1] However, the PSR also correctly notes that the defendant's maximum exposure in this case was 180 months in prison, since that was the maximum penalty for a material support offense at the time this crime was committed. Dkt. 133 at 25, n.4.

departures. Dkt. 242 at 6–7. The defendant's willingness to be the public face of the conspiracy, stressing what he saw as each individual's obligation to engage in physical jihad—i.e., violence against disbelievers—certainly demonstrates his commitment to the plan, as well as his leadership role.

And to underscore his commitment to this plan, the defendant had a telephone conversation after leaving the United States where he said that he and the other defendants were overseas, and that the person he was speaking to would never see him again, consistent with his "Final Message." Dkt. 242 at 8. Clearly the defendant felt that by leaving the United States, there would be no turning back. And, in fact, it was only the arrest in Pakistan of he and the others that ended his and his co-defendants' efforts to enter Afghanistan and fight U.S. forces.

## III. Law and Argument

When considering whether to terminate a defendant's term of supervised release, the Court should consider several specifically identified sentencing factors set forth in 18 U.S.C. § 3553. *Id*. To grant early termination, "a district court must conclude that the early termination of supervised release is warranted by *both* the individual's conduct and also by the interests of justice." *United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999); *United States v. Suber*, 75 F. App'x 442, 444 (6th Cir. 2003) (emphasis added). Factors for the Court's consideration include a defendant's "changed circumstances" such as "*exceptionally* good behavior by the defendant" that "render a previously imposed term . . . too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1996) (emphasis added). As noted below, the defendant has not claimed that the term of his supervision is too harsh. On the contrary, his performance while on supervised release demonstrates that he can thrive while subject to supervision.

Although it is only "occasionally justified," *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) (internal quotation omitted), under 18 U.S.C. § 3583(e)(1), a district court has the authority to terminate a term of supervised release of a defendant released after one year "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]" The correct legal standard that is applied when determining whether to terminate supervised release is found in 18 U.S.C. § 3583(e), which in turn requires consideration of a subset of the factors set forth in 18 U.S.C. § 3553(a). *United States v. Emmet*, 749 F.3d 817, 819, 821 (9th Cir. 2014) ("The correct legal standard for deciding a motion to terminate supervised release is set forth in 18 U.S.C. § 3583(e). . . ").

The defendant has the burden to persuade the Court that early termination of his supervised release is warranted. *See United States v. Cook*, 2024 WL 712529, at *1 (E.D. Va. Feb. 21, 2024); *see also Emmet* 749 F.3d at 824 (Nguyen, C.J., dissenting) ("It is the defendant's burden to establish he is entitled to the rarely-granted remedy of early termination of supervised release.")). Favorable compliance with supervision conditions does not automatically entitle an individual to early termination of supervision. *See Cook*, 2024 WL 712529, at *2 ("Courts within the Fourth Circuit have made clear that 'compliance with the terms of supervised release is not itself sufficient to warrant termination.'"); *Lussier*, 104 F.3d at 36 (determination of early release is a discretionary decision made by the district court, is not warranted as a matter of course, but is "occasionally" justified due to "changed circumstances" of a defendant, such as "exceptionally good behavior").

Although it is commendable that the defendant has complied with his conditions of supervision, this is what he is supposed to do and what is expected. *See Cook*, 2024 WL 712529, at *2 ("…Defendant's compliance with the full terms of supervised release was what this Court

expected when imposing a sentence, and as such, this Court cannot afford significant weight to Defendant having done what he is required to do to maintain his freedom."); *Emmet* 749 F.3d at 823, n.2 (Nguyen, C.J. dissenting) ("[M]ere compliance with terms of supervised release is what is expected, and without more, is insufficient to justify early termination." (*quoting United States v. Grossi*, No. CR-04-40127, 2011 WL 1299251, at *2 (N.D. Cal. Apr. 13, 2012.))

Finally, as noted above, the defendant received a significant variance at sentencing when the Court sentenced him to no additional U.S. confinement, at the request of the government, even after pleading guilty to an offense that carried a 180-month guideline sentence. Accordingly, supervised release is an important component of the defendant's sentence. In *Gall v. United States*, 552 U.S. 38, 48 (2007), the Supreme Court explained at length that a term of supervised release is no trifling matter; it is a form of punishment that involves restrictions on liberty. This aspect of the defendant's sentence is particularly relevant given the seriousness of this offense.

**IV. While Outright Termination is Not Warranted, the Government Does not Object to Modifying the Defendant's Supervised Release Conditions**

None of the foregoing is meant to minimize the fact that the defendant has performed admirably on supervised release. The fact that he attained a 4.0 GPA and was valedictorian of his Paralegal Studies Program at Georgetown University is laudable. Yet it is important to keep in mind that he did all of that *while he was on supervised release*. So clearly being on supervised release was not an impediment to the defendant's success. In fact, supervised release is arguably part of the reason for his recent success. *See Cook*, 2024 WL 712529, at *3 ("…continued supervision is supported by Defendant's apparent success under the program—the structure and guidance he has received under supervised release has helped him become a law-abiding citizen."

Moreover, nowhere in the defendant's motion to terminate supervision does it indicate that being on supervised release has created any undue burdens for him. However, if there are specific aspects of his supervision that have become onerous for the defendant, and that he seeks to modify, the government is open to considering whether specific modifications are appropriate and warranted. However, the defendant has identified no specific burdens that have made his supervised release inappropriate or unworkable and at this time, outright termination is premature.

## CONCLUSION

For all of the foregoing reasons, the government opposes the defense motion to terminate the defendant's supervised release. However, the government would consider specific modifications to address any potential difficulties that supervision poses for this defendant, should he identify them.

Respectfully submitted,

Todd W. Blanche
Attorney General

Theophani K. Stamos
First Assistant United States Attorney

By: /s/ John T. Gibbs
John T. Gibbs
Assistant United States Attorney
United States Attorney's Office for the
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
703-299-3700

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2026, I electronically filed this motion with the Clerk of Court using the CM/ECF system, which will transmit a Notice of Electronic Filing to all counsel of record in this case.

/s/ John T. Gibbs

John T. Gibbs
Assistant United States Attorney
United States Attorney's Office for the
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
703-299-3700